**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Jonathan P. Bach (pro hac vice)
Cynthia S. Arato (SBN: 156856)
Daniel J. O'Neill (pro hac vice)
Denae Kassotis (pro hac vice)
**SHAPIRO ARATO BACH LLP**
1140 Avenue of the Americas, 17th Floor
New York, NY 10036
T: (212) 257-4880
jbach@shapiroarato.com
carato@shapiroarato.com
doneill@shapiroarato.com
dkassotis@shapiroarato.com

Max J. Sprecher, Esq. (SBN: 169285)
**LAW OFFICES OF MAX J. SPRECHER**
5850 Canoga Avenue, 4th Floor
Woodland Hills, CA 91367
T: (818) 996-2255
F: (818) 996-4204
max@sprecherlaw.com

Attorneys for Defendants Harbinger Motors Inc.,
John Harris, William Eberts, Phillip Weicker,
Alexi Charbonneau, and Michael Fielkow

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CANOO TECHNOLOGIES, INC., a Delaware Corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>HARBINGER MOTORS, INC.; a Delaware Corporation; *et al.*,<br><br>        Defendants. | Case No. 2:22cv09309 FLA (JCx)<br>The Hon. Fernando L. Aenlle-Rocha<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION TO CONTINUE CASE SCHEDULE** |

1

# TABLE OF CONTENTS

2    TABLE OF AUTHORITIES ........................................................................... ii

3    PRELIMINARY STATEMENT ....................................................................1

4    I.    PLAINTIFF HAS PERSISTENTLY REFUSED TO IDENTIFY
        ANY ALLEGEDLY MISAPPROPRIATED TRADE SECRETS
5        AT EVERY TURN OF THIS CASE ...................................................5

6    II.   PLAINTIFF AT THE LAST MINUTE STRIPPED OUT AN
        AGREED-UPON DEADLINE FOR THE IDENTIFICATION
7        OF TRADE SECRETS FROM THE SCHEDULE THE
        PARTIES PLANNED TO PROPOSE TO THE COURT .............................9
8
        A.    Plaintiff Switched Positions Shortly Before Filing Its *Ex*
9             *Parte* Motion ...............................................................9

10       B.    Plaintiff Has Abused The *Ex Parte* Process ........................11

11   III.  AS A PRACTICAL MATTER, THE CASE SCHEDULE MUST
        BE TIED TO PLAINTIFF'S IDENTIFICATION OF
12       ALLEGEDLY MISAPPROPRIATED TRADE SECRETS.......................13

13   IV.   PLAINTIFF'S CLAIMED GROUNDS FOR FURTHER DELAY
        OF ITS COURT-ORDERED IDENTIFICATION ARE
14       PRETEXTUAL ............................................................................14

15       A.    Plaintiff's Excuses Based On Document Production
              Concerns Are Unfounded.................................................14
16
        B.    Plaintiff's Excuses Based On Two Individuals Denied
17            Access Under The Protective Order Are Unfounded .........15

18            1.    Plaintiff's Ability To Identify Allegedly
                   Misappropriated Trade Secrets Does Not Turn On
19                 the Involvement Of These Two Individuals ...............15

20            2.    Defendants Have A Strong, Good-Faith Basis For
                   Their Objections To Patel..................................16
21
     CONCLUSION AND REQUEST FOR RELIEF ...........................................19

22

23

24

25

26

27

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S
*EX PARTE* APPLICATION TO CONTINUE CASE SCHEDULE

# TABLE OF AUTHORITIES

**Cases**     **Page(s)**

*Access Optical Networks, Inc. v. Seagate Tech. LLC*,
2025 WL 1518042 (N.D. Cal. May 27, 2025) .................5

*Alphonso Inc. v. Tremor Video, Inc.*,
2022 WL 17968081 (N.D. Cal. Oct. 31, 2022) ...............5

*Am. Contractors Indem. Co. v. Kasparian*,
2023 WL 9319044 (C.D. Cal. Sept. 20, 2023) ...............5

*Brook, Weiner, Sered, Kreger & Weinberg v. Coreq, Inc.*,
53 F.3d 851 (7th Cir. 1995) .................18

*D.P.I. Labs, Inc. v. DeSmet*,
2023 WL 6373861 (C.D. Cal. Apr. 19, 2023) ...............5

*GF Princeton, L.L.C. v. Herring Land Grp., L.L.C.*,
518 F. App'x 108 (3d Cir. 2013) .................18

*Hilao v. Estate of Marcos*,
103 F.3d 762 (9th Cir. 1996) .................18

*In re Bernal*,
207 F.3d 595 (9th Cir. 2000) .................18

*In Re: Canoo, Inc.*,
1:25-cv-00461-MN .................4, 17

*Jardin v. DATAllegro, Inc.*,
2011 WL 3299395 (S.D. Cal. July 29, 2011) ...............6

*Loop AI Labs Inc. v. Gatti*,
2015 WL 9269758 (N.D. Cal. Dec. 21, 2015) ...............5

*M/A-COM Tech. Sols., Inc. v. Litrinum, Inc.*,
2019 WL 4284523 (C.D. Cal. June 11, 2019) ...............5

*Quintara Bioscis., Inc. v. Ruifeng Biztech Inc.*,
2021 WL 2166880 (N.D. Cal. May 27, 2021) ...............5

*Spring Design, Inc. v. Barnesandnoble.com, LLC*,
2010 WL 11723454 (N.D. Cal. Jan. 29, 2010) ...............6

*Swarmify, Inc. v. Cloudflare, Inc.*,
2018 WL 2445515 (N.D. Cal. May 31, 2018) ...............6

**Other Authority**

California Code of Civil Procedure § 2019.210 .................5, 7

**<u>Rule</u>**

Fed. R. Civ. Pro. 25 ................................................................................. 18

1  Defendants Harbinger Motors, Inc., John Harris, William Eberts, Phillip
2  Weicker, Alexi Charbonneau, and Michael Fielkow (collectively, "Defendants")
3  respectfully submit this Opposition to Plaintiff's *Ex Parte* Application to Continue
4  Case Schedule (Dkt. 255).

5  **PRELIMINARY STATEMENT**

6  Plaintiff's application misstates the record and history of this case in an effort to
7  lay false blame on Defendants for supposedly necessitating Plaintiff's fourth
8  application for *ex parte* relief.  Defendants have no objection to any of the specific
9  calendar extensions Plaintiff seeks.  Moreover, the parties had agreed upon a consent
10  schedule to propose to the Court, which was on the verge of being filed as a joint
11  stipulation, when Plaintiff at the last minute struck an important deadline it had
12  previously agreed to include:  namely, the deadline by which Plaintiff must identify
13  any trade secrets that Defendants allegedly misappropriated.  For reasons set forth
14  below, Defendants oppose the proposed schedule insofar as it fails to include such a
15  deadline, which, as Magistrate Judge Chooljian has recognized, is critical to the
16  progress of this case.

17  This case is an anomaly.  Now more than two and a half years since its inception,
18  Plaintiff has yet to provide even a preliminary identification of any particular trade
19  secrets Defendants allegedly misappropriated.  This is in stark contrast to the practice
20  in this District and in California courts of requiring such identification at the outset
21  of any trade secrets case, so that Defendants are provided fair notice and can fashion
22  defenses and discovery requests accordingly.  Plaintiff's *ex parte* application—
23  proposing a schedule that seeks to dodge this issue—is nothing but Plaintiff's latest
24  attempt to evade its identification obligation.  Indeed, earlier this year, following the
25  Trustee's substitution into this case, Magistrate Judge Chooljian responded to
26  Defendants' repeated concerns about the lack of identification by █████████████
27  ████████████████████████████████████████████████████████████
28  ████████████████████████████████████████████████████

1    ████████████ (Dkt. 252 at 16).  Notwithstanding that Order, ████████████

2    ████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████

4    ████████████████████

5    Magistrate Judge Chooljian separately ordered Plaintiff to ████████████

6    ████████████████████████████████████████████████████

7    ████████████████████████████████████████.  In order to

8    facilitate Plaintiff's identification, Defendants agreed to accelerate their production

9    of such documents, and did accelerate it, but Plaintiff is now seeking to avoid its

10   concomitant obligation to identify allegedly misappropriated trade secrets by

11   refusing to recognize any deadline and by ginning up false excuses for further delay.

12       Further delay should not be countenanced.  Setting a deadline for Plaintiff's trade

13   secret identification is necessary not only to move this case along, but also for other

14   very practical case management reasons:  Defendants cannot begin to conduct

15   discovery in earnest with respect to any allegedly misappropriated trade secrets until

16   Plaintiff states what they are.  Without a deadline for such identification, Defendants

17   risk participating in a fact discovery process that will have elapsed without allowing

18   sufficient time for necessary post-identification discovery—discovery essential to

19   Defendants in developing their trade secret defenses.

20       Contrary to Plaintiff's moving papers, this is not an idea Defendants dropped on

21   Plaintiff at the last minute.  Defendants have made clear to Plaintiff for months, in

22   extensive correspondence and numerous meet-and-confer sessions, that any schedule

23   must provide for a period of post-identification discovery and hence a deadline for

24   such identification.  Indeed, as a result of discussions between the parties, agreement

25   was reached and proposed case schedules were exchanged that expressly included an

26   agreed-upon deadline for Plaintiff's identification.  Shortly before filing this motion,

27   Plaintiff reversed course, stripped that deadline from its proposed schedule, and

28   refused to contemplate any schedule providing for the requisite identification.

1   Plaintiff's purported justifications for avoiding such a deadline cannot withstand

2   scrutiny.  Defendants have engaged in a rolling production of the documents that

3   Judge Chooljian ████████████████████████████████████████████████

4   ████████████.  Such documents disclose the design specifications of all major facets

5   of Defendants' EV technology.  At Plaintiff's request, Defendants confirmed that

6   they would include documents that detailed such specifications at various times in

7   the development process.  Defendants are also producing voluminous amounts of

8   related communications.  A major document production was made yesterday, which

9   Plaintiff has yet to review.  A further production was made this morning.  Further

10  document production deadlines arise on August 15 and September 12.  It is telling

11  that Plaintiff is already complaining about Defendants' document production when it

12  is not yet complete—Plaintiff is preemptively manufacturing excuses for further

13  delay.

14  Plaintiff also misstates the record with respect to two individuals Plaintiff has

15  sought to designate for document review activity under the Protective Order.

16  Defendants do not object to Plaintiff's reliance on former Canoo employees.

17  Defendants do object, however, to Plaintiff's reliance on present employees of Tony

18  Aquila, Canoo's former CEO.  Aquila, though having ceded the reins and liquidated

19  his former company, has improperly retained control of the future direction of this

20  case.  As disclosed in the recent bankruptcy proceedings, the Trustee has surrendered

21  to him decision-making authority with respect to any settlement of this case, even

22  though Aquila owes no fiduciary obligation to the bankrupt estate or to its creditors

23  and even though Aquila's interests may conflict with those of the estate.  Indeed,

24  neither the Trustee, nor the bankrupt estate, is now the principal beneficiary on

25  Plaintiff's side of the case.  Plaintiff's counsel, the Munck Wilson law firm, holds a

26  50% contingency interest in any judgment or settlement, and Aquila personally holds

27  an additional 5% contingent interest.  Aquila's control over settlement, and the

28  Trustee's abnegation of his traditional fiduciary role, are currently the subject of an

1  appeal pending in the District of Delaware. *In Re: Canoo, Inc.*, 1:25-cv-00461-MN.

2  Plaintiff's attempted designation of Messrs. John Maxin and Nitin Patel—both of

3  whom currently report to and are paid by Aquila through his company AFV

4  partners—is a backdoor way to increase Mr. Aquila's improper influence and control

5  over this litigation.

6      Regardless of Maxin and Patel's close affiliation with Aquila, it is preposterous

7  to assert that Plaintiff's ability to review documents and identify misappropriated

8  trade secrets depends on their involvement and assistance.  Maxin has repeatedly

9  professed that he has no subject matter expertise whatsoever with regard to the

10 technology at issue.  Indeed, in recent correspondence with defense counsel, Plaintiff

11 has indicated that it does not intend to dispute Defendants' objection as to him.

12 Plaintiff's effort to avoid timely identification thus turns on the meagre argument that

13 it cannot complete that task without the assistance of single individual, Mr. Patel.

14 But it is ridiculous to suggest that there is no one else, with knowledge in the field,

15 who could determine whether one EV company has misappropriated the

16 technological components of another.  Trade secret plaintiffs retain independent

17 experts all the time.  EV technology is hardly an esoteric field.  Indeed, in many

18 cases, party employees are prohibited from access to a counterparty's highly

19 confidential materials, and yet the requisite trade secret identification is promptly

20 made.  If Plaintiff were truly being diligent about reviewing technical documents and

21 identifying allegedly misappropriated trade secrets, it would not be relying upon or

22 tying up this case on the basis of a single individual; it would be deploying a team.

23 Plaintiff's professed dependence on a single individual is a recipe for further delay.

24      As further elaborated below, Defendants respectfully request that the Court deny

25 Plaintiff's *ex parte* application.  As set forth in a proposed order accompanying this

26 submission, Defendants respectfully request that any case schedule include an

27 express deadline for the completion of Plaintiff's trade secret identification.

28 Defendants have proposed October 13, 2025—a date Plaintiff previously agreed to.

Defendants also respectfully request that the Court set a date for a status conference to discuss and assure the further progress of this case.

I.   **PLAINTIFF HAS PERSISTENTLY REFUSED TO IDENTIFY ANY ALLEGEDLY MISAPPROPRIATED TRADE SECRETS AT EVERY TURN OF THIS CASE**

It is widely accepted in trade secret litigation that the plaintiff must identify any allegedly misappropriated trade secrets, and must do so toward the outset of the case. California Code of Civil Procedure § 2019.210 provides that, "before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity." Federal courts have often applied this basic tenet of California law, especially where, as here, a plaintiff asserts a claim under the California Uniform Trade Secrets Act. *E.g.*, *Access Optical Networks, Inc. v. Seagate Tech. LLC*, 2025 WL 1518042, at *2 (N.D. Cal. May 27, 2025); *D.P.I. Labs, Inc. v. DeSmet*, 2023 WL 6373861, at *1-2 (C.D. Cal. Apr. 19, 2023); *Alphonso Inc. v. Tremor Video, Inc.*, 2022 WL 17968081, at *2 (N.D. Cal. Oct. 31, 2022); *Loop AI Labs Inc. v. Gatti*, 2015 WL 9269758, at *3 (N.D. Cal. Dec. 21, 2015). Even when not expressly applying § 2019.210, federal courts routinely exercise their supervisory authority to insist on prompt identification of the trade secrets at issue. *E.g.*, *Am. Contractors Indem. Co. v. Kasparian*, 2023 WL 9319044, at *2 (C.D. Cal. Sept. 20, 2023) ("The Court finds that identification of the trade secrets at issue … is appropriate and necessary for the orderly prosecution of Plaintiff's trade secret claims."); *Quintara Bioscis., Inc. v. Ruifeng Biztech Inc.*, 2021 WL 2166880, at *1 (N.D. Cal. May 27, 2021) (court "usually applies a procedure akin to Section 2019.210 in trade secret cases"); *M/A-COM Tech. Sols., Inc. v. Litrinum, Inc.*, 2019 WL 4284523, at *2 (C.D. Cal. June 11, 2019) ("requirements of Section 2019.210 are warranted and appropriate to assist in the orderly and expeditious handling of discovery").

1   Such identification serves a number of salutary purposes.  It is essential "to frame
2   the dispute at an early stage of litigation and to prevent abuse of discovery."  *Jardin*
3   *v. DATAllegro, Inc.*, 2011 WL 3299395, at *3-5 (S.D. Cal. July 29, 2011).  "[I]n the
4   absence of a meaningful trade secret designation, reasonable limits on discovery
5   cannot be established nor can counsel or the court understand, with any certainty,
6   what trade secrets are being claimed."  *Spring Design, Inc. v. Barnesandnoble.com,*
7   *LLC*, 2010 WL 11723454, at *1 (N.D. Cal. Jan. 29, 2010); *see also Swarmify, Inc. v.*
8   *Cloudflare, Inc.*, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018) (early
9   identification prevents plaintiff from "tak[ing] discovery into the defendants' files,
10  and the cleverly specify[ing] what ever happens to be there as having been trade
11  secrets stolen from plaintiff").

12  Measured against this accepted practice, this case stands out.  In two and a half
13  years of litigation not a single allegedly misappropriated trade secret has been
14  identified with any particularity.  From the outset, Defendants have pressed for
15  identification.  Indeed, early on Canoo committed to providing such disclosure—in
16  advance of discovery—when the parties first submitted their joint case management
17  plan.  (Joint Rule 26(f) Report, Mar. 17, 2023 (Dkt. 83) at 11 ("acknowledg[ing]"
18  Canoo "will have to identify its alleged trade secrets with particularity *before* any
19  related discovery can proceed")).

20  Nine months into the litigation, Canoo finally provided Defendants with a
21  purported "Initial Identification of Trade Secrets" ("IITS").  That identification was
22  plainly deficient.  Instead of providing a list of allegedly misappropriated trade
23  secrets and thereby delimiting the scope of this case, it

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S
*EX PARTE* APPLICATION TO CONTINUE CASE SCHEDULE

1  ████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████

3  ██████████████████████████████████████████████████████████

4  █████████████████████████████████.

5      On these grounds, Defendants promptly moved for a protective order, seeking to

6  bar discovery under § 2019.210 and related federal law until Canoo provided fair

7  notice of any trade secrets Defendants were accused of misappropriating.  (Dkt. 172-

8  1; Dkt. 173).  Magistrate Judge Chooljian was receptive to Defendants' concerns.

9  ██████████████████████████████████████████████████████

10  █████████████████████████████████. (Declaration of Jonathan P.

11  Bach ("Bach Decl.") Ex. 1 at 5-6 (█████████████████████████████

12  ███████████████████████████████████████████████████

13  ███████████████████████████████████████████████

14  ████████████████████████████████████████████████████

15  ████████████████████████████████████████████

16  ██████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████

18  ██████████████████  (*Id.* at 6, 34).  To date, Canoo has not honored that request and

19  has continued to stonewall.  (Dkt. 194-26 ¶¶ 11-15; Dkt. 194-39 ¶¶ 4-7).

20      Magistrate Judge Chooljian also ██████████████████████████████

21  ████████████████████████████████████████████████████

22  (Bach Decl. Ex. 1 at 6).  In late 2023, Defendants promptly took up that invitation

23  and propounded a single interrogatory—Interrogatory No. 1—seeking identification

24  of any allegedly misappropriated trade secrets.  Plaintiff served an interrogatory

25  response that again failed to provide the requested identification.  Defendants thus

26  moved to compel a more complete response.  (Dkt. 208).  Magistrate Judge

27  Chooljian ████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████

Case No. 2:22cv09309 FLA (JCx)
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S
*EX PARTE* APPLICATION TO CONTINUE CASE SCHEDULE

1   ██████████████████████████████████████████

2   ████████████████████████████████████

3   ██████████ (Dkt. 252 at 16). ███████████████████

4   ███████████████████████████████████████████

5   ████████████████████████████████████████

6   ████████████████████████████████████████

7   ███ . (*Id.* ██████████████████████████) (emphasis added); Dkt. 251 (██████

8   ████████████████ )).

9         At the Court-ordered 30(b)(6) deposition, Plaintiff put forward John Maxin, a

10   former in-house lawyer at Canoo, who now reports directly to former Canoo CEO

11   Aquila as an employe of AFV Partners.  As Plaintiff's proffered deponent, Maxin

12   repeatedly stated that █████████████████████████████████████

13   ██████████ . (Bach Decl. Ex. 2 at ███████████████████████

14   ████████████████████████████████████████

15   ███████████████████████████████████████████

16   ████████████████████████████████████████

17   █████████████████████████████████████████████

18   ████████████████████████████████████████

19   ████████████████████████████████████ .

20       More significantly, █████████████████████████

21   ████████████████████████████████████████

22   ███████████████████████████████████████████

23   █████████████████████████████████████

24   ██████████████████████████████████████

25   ████████████████████████████ (Bach Decl. Ex. 2 at 23, 25, 28,

26   163, 185).  Plaintiff's refusal to provide information about any alleged

27   misappropriation at the Court-ordered deposition makes it all the more critical that it

28

1 | be held to Magistrate Judge Chooljian's Order, ██████████████████████

2 | ███████████████. (Dkt. 252).

3 | **II.    PLAINTIFF AT THE LAST MINUTE STRIPPED OUT AN AGREED-**

4 | **UPON DEADLINE FOR THE IDENTIFICATION OF TRADE**

5 | **SECRETS FROM THE SCHEDULE THE PARTIES PLANNED TO**

6 | **PROPOSE TO THE COURT**

7 | **A.    Plaintiff Switched Positions Shortly Before Filing Its *Ex Parte* Motion**

8 | Following the Court-ordered 30(b)(6) deposition, the parties continued to meet

9 | and confer about extending the existing case schedule to accommodate further

10 | discovery.  For months, Defendants repeatedly made clear that they expected

11 | Plaintiff to stick to a deadline for identification of any allegedly misappropriated

12 | trade secrets, especially in light of ███████████████████████████████

13 | ███████████. (Dkt. 252 at 16).  Defendants also repeatedly made clear that

14 | such a deadline was critical so as to provide for a period of post-identification

15 | discovery, *i.e.*, discovery that would focus on any allegedly misappropriated trade

16 | secrets once they had been identified.  As a result, the schedules the parties

17 | exchanged with each other, in the weeks leading up to the present *ex parte* motion,

18 | expressly included a mutually agreed-upon deadline for Plaintiff's identification of

19 | misappropriated trade secrets, namely October 13, 2025.

20 | Although Plaintiff waited until recently to file an emergency motion, as far back

21 | as May the parties were already involved in active discussions about the case

22 | schedule and about how it could be structured to accommodate Magistrate Judge

23 | Chooljian's discovery Orders.  Defense counsel emphasized that any case schedule

24 | would need to provide for additional discovery once any allegedly misappropriated

25 | trade secrets had been identified.  (Pl. Ex. 6, Dkt. 255-7, at 2).  Accordingly, on June

26 | 2, Plaintiff's counsel proposed dates for the substantial completion of the prerequisite

27 | document production and for identification of any allegedly misappropriated trade

28 | secrets, and suggested the parties "jointly approach the Court to adjust the case

schedule accordingly." (Pl. Ex. 8, Dkt. 255-9, at 3). A few days later, Defendants responded with a slightly modified counterproposal, agreed to jointly approach the Court to adjust the case schedule, and noted that "[a]ny request to the Court for such relief should provide for and explain that Defendants will need sufficient time to conduct responsive, follow-on discovery once Plaintiff has identified any allegedly misappropriated trade secrets." (Pl. Ex. 9, Dkt. 255-10, at 4).

By July 2, 2025, the parties had agreed to set a September 12 deadline for the required document productions and an October 13 deadline for the identification of misappropriated trade secrets. (Pl. Ex. 14, Dkt. 255-15, at 2-3). Indeed, Plaintiff prepared and circulated a revised case schedule that expressly included the two agreed-upon deadlines and set the fact discovery cut-off months later, so as to allow time for necessary post-identification discovery. (*Id.* at 3). By July 21, the parties agreed to jointly propose to the Court a case schedule that expressly included the agreed-upon deadlines, including the deadline for identification of allegedly misappropriated trade secrets. (Bach Decl. Exs. 3, 4; Pl. Ex. 15, Dkt. 255-16 (setting September 12, 2025 as the deadline for substantial completion of document productions, October 13, 2025 as Plaintiff's deadline to supplement its interrogatory by identifying allegedly misappropriated trade secrets in accordance with Judge Chooljian's Order, and April 13, 2026 as the fact discovery cut-off)). Plaintiff's counsel noted that if Defendants maintained their objection to Mr. Patel gaining authorization under the Protective Order, Plaintiff "may need to adjust the deadlines in the joint stipulation to accommodate resolution of those objections." (Pl. Ex. 15, Dkt. 255-16, at 3).

Defendants relied on the parties' shared understanding of how the schedule would proceed, accelerating the bulk of their document production, at Plaintiff's request, to accommodate Plaintiff's anticipated identification. Indeed, Defendants committed to an August 15 deadline by which to produce the clear majority of the required documents—a deadline approximately two months in advance of the

1  agreed-upon date for Plaintiff's identification.  (Pl. Ex. 13, Dkt. 255-14, at 3; Pl. Ex.
2  14, Dkt. 255-15, at 2-3).  Defendants made that commitment expecting Plaintiff to
3  honor its end of the bargain by timely identifying any allegedly misappropriated
4  trade secrets.

5      Notwithstanding these agreements and arrangements, two weeks after the parties
6  had exchanged a draft joint stipulation for submission to the Court, Plaintiff did an
7  about-face.  Plaintiff announced that it was no longer willing to include any deadline
8  for its identification obligation in any proposed schedule.  Instead—well aware of
9  Defendants' longstanding concerns and contrary position—Plaintiff asked
10  Defendants to consent to a revised schedule that would omit any reference to
11  Plaintiff's identification obligation.  (Bach Decl. Ex. 5 at 2).  Two days later,
12  Plaintiff went a step further by asking Defendants to consent to a schedule that would
13  also omit any deadline for the required document productions.  (Pl. Ex. 7, Dkt. 255-
14  8, at 3).  Given the lack of identification of even a single allegedly misappropriated
15  technical trade secret to date, and given Defendants' fundamental due process rights
16  to fair notice and discovery following appropriate identification, Defendants refused
17  to agree to a schedule that now omitted the formerly agreed-upon deadline for
18  Plaintiff's long-awaited identification of allegedly misappropriated trade secrets.  (*Id.*
19  at 2-4).

20      **B.    Plaintiff Has Abused The *Ex Parte* Process**

21      This history should make clear that Plaintiff's resort to *ex parte* process was
22  unnecessary.  Defense counsel, with offices on the East Coast, did not receive
23  Plaintiff's submission until after the close of business last evening.  Needless to say,
24  it is not ideal to pull together papers—especially on issues as important as this—in a
25  mere 24 hours.  Plaintiff could have sought the same relief through an ordinary
26  briefing process, especially given the parties' overall agreement on extending the
27  case schedule.  This Court's Initial Standing Order makes clear that "[e]x parte
28  applications are solely for extraordinary relief and should be used with discretion"

1   and that "[s]anctions may be imposed for misuse of *ex parte* applications." (Dkt. 20

2   at 15). The Court repeated that admonition in denying one of Plaintiff's earlier *ex*

3   *parte* applications, emphasizing that "[e]x parte relief is not justified by a desire to

4   avoid … deadlines" and that further "meritless requests for ex parte relief may result

5   in the imposition of sanctions." (Order, dated May 24, 2023 (Dkt. 140) at 1-2).

6       Nevertheless this is now Plaintiff's fourth resort to *ex parte* practice. (*See* Dkts.

7   60, 131, 245).[1] Plaintiff has utterly failed to justify the expedited, "extraordinary

8   relief" it seeks. For several months now, the parties have acknowledged to each

9   other the need to extend the current August 22, 2025 fact discovery cutoff. The

10  parties were on the verge of finalizing a stipulation for the Court's approval that

11  would have extended each of the dates in the current scheduling order while also

12  including an agreed-upon deadline—October 13, 2025—for the identification of

13  allegedly misappropriated trade secrets. But rather than finalize that stipulation and

14  submit it to the Court, Plaintiff abandoned the agreed-upon schedule, citing

15  purported concerns about Defendants' document production (much of which it has

16  yet to review) and about two individuals who are plainly not authorized to review

17  highly confidential materials under the governing Protective Order.

18      Plaintiff could have could have sought long ago to amend the Protective Order,

19  or to challenge Defendants' objection to Messrs. Maxin and Patel, rather than

20  proceeding at the last minute by way of an emergency *ex parte* application.

21  Defendants first objected to Plaintiff's designation of Maxin and Patel over two

22  months ago, on June 9, 2025 (Pl. Ex. 7, Dkt. 255-8, at 18), and Plaintiff has been on

23  notice since March 31, 2025, when the Trustee substituted into this case (Dkt. 250),

24

---

25  [1] Plaintiff's third ex parte application sought additional time to respond to the Court's
    Order to Show Cause while the Trustee sought the bankruptcy court's approval to
26  retain Canoo's prior counsel, Munck Wilson Mandala, LLP, as counsel in this action.
27  (Dkt. 245). Defendants did not oppose that application because given the Court-
    ordered 14-day response period,  Plaintiff could not have obtained timely relief under
28  the standard motion procedure.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S
*EX PARTE* APPLICATION TO CONTINUE CASE SCHEDULE

1  that the Protective Order might need to be amended to accommodate the Trustee's

2  review of highly confidential documents.  Indeed, the very day of the Trustee's

3  substitution, Magistrate Judge Chooljian ███████████████████████████████

4  ████████████████████████████████████████████████████████████████████████

5  ███████████████████████████████████.  (Dkt. 252 at 16).  Yet Plaintiff

6  waited months—and until less than two weeks before the current fact discovery

7  cutoff—to seek relief from this Court.  Plaintiff, not Defendant, thus created the

8  present "emergency."  On that ground alone, Plaintiff's *ex parte* application is

9  improper and should be denied.

10  **III.    AS A PRACTICAL MATTER, THE CASE SCHEDULE MUST BE**

11  **TIED TO PLAINTIFF'S IDENTIFICATION OF ALLEGEDLY**

12  **MISAPPROPRIATED TRADE SECRETS**

13  A deadline for the identification of allegedly misappropriated trade secrets is

14  necessary to ensure that Defendants will have sufficient time to conduct necessary

15  post-identification discovery.  Without that deadline, Defendants risk having the

16  period for fact discovery elapse without having had adequate time to take discovery

17  and prepare their defenses—work they cannot meaningfully begin until they have

18  been informed of the items they allegedly misappropriated.  Plaintiff's currently

19  proposed schedule fails to include any such concept, even though courts have

20  consistently recognized a plaintiff's identification of the secrets at issue as the *sine*

21  *qua non* of any trade secrets case, typically requiring it at the beginning of the case

22  and often before discovery even begins.  *See supra* at § I (citing cases).

23  Indeed, the issue of identification has been the central focus of this litigation to

24  date, requiring extensive briefing and active intervention by the assigned Magistrate

25  Judge.  The case schedule should not finesse the issue.  It should set a deadline,

26  consistent with Magistrate Judge Chooljian's Orders, to keep the case moving

27  forward and to ensure Defendants will have fair notice in time to conduct appropriate

28  discovery.  Magistrate Judge Chooljian took steps to assure a timely and orderly

1  identification of allegedly misappropriated trade secrets.  The case schedule should

2  embody the steps set forth in her well-reasoned Orders, which Plaintiff chose not to

3  appeal.  Plaintiff should not be permitted to subvert her rulings by further delaying its

4  identification.

5  **IV.   PLAINTIFF'S CLAIMED GROUNDS FOR FURTHER DELAY OF ITS**

6      **COURT-ORDERED IDENTIFICATION ARE PRETEXTUAL**

7    **A.   Plaintiff's Excuses Based On Document Production Concerns Are**

8       **Unfounded**

9    Plaintiff's moving papers falsely portray Defendants as "refus[ing] to engage in

10  meaningful document discovery."  (Pl. Br. at 1).  Defendants began their major

11  document production at the same time that Plaintiff began its major document

12  production.  Both sides awaited Magistrate Judge Chooljian's direction in pending

13  discovery rulings.  Defendants have yet to propound document requests tailored to

14  particular alleged trade secrets because Plaintiffs have yet to identify the particular

15  trade secrets at issue in this case.

16    Plaintiff's unsubstantiated allegation that Defendants are not complying with

17  Magistrate Judge Chooljian's document production directives has no basis.

18  Defendants have been engaged in producing documents sufficient to disclose the

19  design specifications for numerous EV components, as well as related

20  communications, on a rolling basis.  Defendants agreed to accelerate that production

21  at Plaintiff's request.  Defendants made significant additional productions yesterday

22  and today in anticipation of Defendants' accelerated August 15 production deadline.

23  Defendants agreed to that accelerated deadline as a condition for Plaintiff's

24  concomitant agreement to identify any allegedly misappropriated trade secrets by

25  October 13.  Defendants' production includes numerous diagrams and related

26  materials that detail the specifications of Defendants' technology.  Indeed,

27  Defendants have agreed to produce, and have been producing, documents sufficient

28  to show Defendants' design specifications at multiple different points in the

1  development process.  (Pl. Ex. 13, Dkt. 255-14, at 3).  Defendants have until
2  September 12 to complete their production.

3      It bears emphasis that Magistrate Judge Chooljian directed Defendants to produce
4  only certain categories of documents as a prerequisite for Plaintiff's final
5  identification of trade secrets.  (Dkt. 251).  Plaintiff's stated concerns are based not
6  on a lack of compliance with Judge Chooljian's Orders, but on Defendants' refusal to
7  honor Plaintiff's requests for yet additional documents and information before
8  Plaintiff's requisite trade secret identification is made.  For instance, Plaintiff's
9  request for so-called "initial design documents" and its request for Defendants to
10  supplement its production by "identifying any specific category of documents that it
11  has produced" (Lopano Decl. ¶ 77) go beyond any requirement set forth in Judge
12  Chooljian's Order.  (*See* Dkt. 251).  In any event, Defendants have produced
13  documents reflecting initial stage designs, and Defendants have made clear that they
14  will work with Plaintiff to consider additional specific discovery once Plaintiff
15  identifies allegedly misappropriated trade secrets.  (Bach Decl. Ex. 6 at 2).

16  **B.  Plaintiff's Excuses Based On Two Individuals Denied Access Under**
17  **The Protective Order Are Unfounded**

18      **1.  Plaintiff's Ability To Identify Allegedly Misappropriated**
19          **Trade Secrets Does Not Turn On the Involvement Of These**
20          **Two Individuals**

21      Plaintiff's references to former Canoo in-house counsel John Maxin should be
22  disregarded entirely.  In recent correspondence, Plaintiff has indicated that it does not
23  plan to challenge Defendants' objection to his having access to highly confidential
24  materials.  Instead, Plaintiff has indicated that it plans to challenge only Defendants'
25  objection with respect to Mr. Patel.  (Pl. Ex. 16, Dkt. 255-17).  Plaintiff's decision
26  not to press for access for Mr. Maxin makes good sense.  ████████████████████
27  ████████████████████████████████████████████████████████████
28

1  ███████████████████████████████████████████████████

2  ████████████████████████.

3      That leaves Mr. Patel.  In essence, Plaintiff is claiming that its entire ability to

4  comply with its identification obligation turns on the involvement of a single

5  individual.  That proposition is absurd.  Many other individuals skilled in the field of

6  EV technology are available to be retained at Plaintiff's behest.  Parties in trade

7  secret litigation routinely rely on independent outside experts to assist them.  Indeed,

8  it is common in trade secret litigation for parties to have to retain and rely upon

9  independent outside experts, because often party employees are barred from access

10 to their litigation adversary's highly confidential materials.  There is no reason why

11 Plaintiff cannot proceed with someone other than Mr. Patel.  Presumably Plaintiff

12 will need more than one individual to conduct its review in any event.

13      **2.    Defendants Have A Strong, Good-Faith Basis For Their**

14           **Objections To Patel**

15     The issue of whether Patel can be authorized under the Protective Order will be

16 taken up by Margistrate Judge Chooljian upon submission of an appropriate motion.

17 As noted, the question of one individual's participation should have no bearing on

18 the larger question of whether Plaintiff can timely identify misappropriated trade

19 secrets.  For present purposes, it suffices to note that Defendants have legitimate

20 grounds to object to Patel's involvement.

21     Contrary to assertions in Plaintiff's moving papers, Defendants do not generally

22 object to Plaintiff's retention of former Canoo employees to assist in Plaintiff's

23 litigation efforts.  As Defendants have stated in correspondence, Plaintiff is free to

24 seek the assistance of skilled professionals who formerly worked at Canoo.  (Pl. Ex.

25 7, Dkt. 255-8, at 13 ("We do not object to the Trustee designating other individuals

26 who have relevant subject matter knowledge (including from time spent at

27 Canoo)…."))  Defendants' objection, which will be elaborated if and when Plaintiff

28 brings the issue of Patel's involvement to the attention of the Magistrate Judge, is

1  based on Patel's current affiliation with Tony Aquila, Canoo's former CEO, who

2  holds a direct financial stake in the outcome of this litigation and control over any

3  settlement.

4      In the bankruptcy proceedings, Aquila used an entity he controls to purchase

5  Canoo assets, including Canoo's intellectual property portfolio, consisting of

6  numerous patents as well as unlisted and unspecified "trade secrets." (Bach Decl.

7  Ex. 7 at 5, 9; *see* Bach Decl. Ex. 8 ¶¶ 7-8). As a result of that transaction, he now

8  holds a 5% interest in any financial recovery the Trustee achieves in this litigation.

9  He also now holds control over any settlement, even though he owes no fiduciary

10  obligation to bankrupt estate or to its creditors and even though his interests may

11  conflict with those of the estate. (Bach Decl. Ex. 7 at 6, 10 (Aquila's company

12  receives "10% of any Net Harbinger Recovery," meaning 10% of what remains after

13  Munck Wilson Mandala, LLP receives its 50% contingency fee); *see id.* at 22 ("Any

14  settlement of the Harbinger Matter shall require the mutual consent of Seller and

15  Buyer.")). Aquila's control over any settlement is currently the subject of an appeal

16  pending in Delaware. *See In Re: Canoo, Inc.*, Case No. 25-cv-461-MN (D. Del.).

17      Plaintiff's designation of Patel—who is currently employed by and reports to

18  Aquila at AVF Partners—is simply a backdoor way to increase Aquila's private

19  control and influence over the direction of this case. Defendants have consistently

20  objected to Aquila's behind-the-scenes control and decision-making authority.

21  Surely Plaintiff can find someone to help review documents who is not under

22  Aquila's direct control. Defendants do not know what financial arrangements Patel

23  is contemplating with respect to any assistance provided to Plaintiff or whether they

24  require approval by the Bankruptcy Court.

25      Moreover, regardless of issues raised by his close affiliation with Aquila, Patel

26  does not meet the criteria for authorization under the current Protective Order, and

27  Plaintiff has yet to apply to the Magistrate Judge for amendment of that Order.

28  Plaintiff initially purported to designate Patel as one of the Trustee's document

1   reviewers "[p]ursuant to paragraph 7.3(g)" of the Protective Order. (Bach Decl. Ex.

2   9). But that provision is plainly inapt, as it is reserved for employees and officers of

3   the Trustee. Defendants objected on that basis (Pl. Ex. 7, Dkt. 255-8, at 18), and

4   Plaintiff implicitly conceded its overstep, suggesting the parties agree to amend that

5   provision or, if not, agree that Patel could be designated under Section 7.7, a

6   different, but equally inapt provision reserved for independent "Experts." (*See* Bach

7   Decl. Ex. 10). Section 7.7 governs the disclosure of protected material to "Experts,"

8   defined in Section 2.7 as "a person with specialized knowledge or experience in a

9   matter pertinent to the litigation who (1) has been retained by a Party or its counsel to

10  serve as an expert witness or as a consultant in this Action, (2) is not a past or current

11  employee of a Party, and (3) at the time of retention, is not anticipated to become an

12  employee of a Party." (Dkt. 163 at 5). Mr. Patel does not qualify, for two reasons.

13  *First*, Plaintiff conspicuously makes no claim that Mr. Burtch or Munck Wilson has

14  retained Mr. Patel. Defendants raised this issue in their objection and Plaintiff has

15  yet to respond. (Bach Decl. Ex. 10; Pl. Ex. 17, Dkt. 255-18, at 16). *Second*, under

16  Section 2.7, an "Expert" cannot be "a past or current employee of a Party." Mr.

17  Patel's past employment with Canoo is clearly disqualifying under this provision to

18  the extent that Plaintiff seeks to have him assume an "Expert" role. The clear import

19  of Section 2.7 of the Protective Order is that a retained "Expert" be independent and

20  have no prior ties to the litigation.[2]

21  _____

22  [2] In recent correspondence, Plaintiff cites cases for the proposition that the Trustee
    may "designate" under the Protective Order "any employees [of Canoo that] Canoo
23  could have designated" before the Trustee substituted into the action. (Pl. Ex. 16,
    Dkt. 255-17, at 3). The Trustee's cited cases have nothing to do with discovery,
24  much less protective orders or highly confidential documents. These cases merely
    illustrate basic substitution principles under Rule 25—*i.e.*, that a new party stands in
25  the shoes of the old party as a general legal principle. *See Hilao v. Estate of Marcos*,
    103 F.3d 762, 766 (9th Cir. 1996) (substituted parties were "parties" that could be
26  held in contempt); *In re Bernal*, 207 F.3d 595, 597-99 (9th Cir. 2000) (affirming
27  bankruptcy court's denial of party's attempt to enter a case as an intervenor and
28

1    In its present motion, Plaintiff seizes on these as of yet unlitigated and

2    unresolved issues as justification for avoiding any deadline to identify allegedly

3    misappropriated trade secrets. The issue of Patel should be seen for what it is:  a

4    limited, one-off issue in a much broader case. Any dispute concerning Patel should

5    not interfere with Plaintiff's overall ability to complete its identification on a timely

6    basis.

7                    **CONCLUSION AND REQUEST FOR RELIEF**

8    For the foregoing reasons Defendants respectfully request that the Court (1) deny

9    Plaintiff's application for *ex parte* relief, (2) endorse the proposed scheduling order

10   accompanying Defendants' submission which includes an October 13, 2025 deadline

11   for the identification of trade secrets, (3) set a date for a status conference to discuss

12   and assure the progress of this case, and (4) grant such further relief as the Court

13   deems just and proper.

14

15   Dated:  August 13, 2025                    Respectfully submitted,

16
                                               SHAPIRO ARATO BACH LLP
17
                                               /s/ Jonathan P. Bach
18                                             Jonathan P. Bach
19                                             Cynthia S. Arato
                                               Daniel J. O'Neill
20                                             Denae Kassotis

21
                                               *Attorneys for Defendants Harbinger Motors,*
22                                             *Inc., John Harris, William Eberts, Phillip*
                                               *Weicker, Alexi Charbonneau, and Michael*
23                                             *Fielkow*

24   ─────────────────────
     noting that proper issue was one of "substitution" under Rule 25); *GF Princeton,*
25   *L.L.C. v. Herring Land Grp., L.L.C.*, 518 F. App'x 108, 115-16 (3d Cir. 2013)
26   (affirming denial of substituted party's belated motion for leave to amend, in part
     because original party could have amended earlier); *Brook, Weiner, Sered, Kreger &*
27   *Weinberg v. Coreq, Inc.*, 53 F.3d 851, 852 (7th Cir. 1995) (substituted party bound
28   by original party's consent to appointment of magistrate judge).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Harbinger Motors Inc., Electron Transport Inc., John Henry Harris, William Eberts, Phillip Weicker, Alexi Charbonneau, and Michael Fielkow, certifies that this brief contains 19 pages, which complies with the page limit set by the Court's Initial Standing Order, dated January 5, 2023 (Dkt. 20).

SHAPIRO ARATO BACH LLP


/s/ Jonathan P. Bach
Jonathan P. Bach